**In re Edward James SESSIONS, Petitioner.**

No. 81–2296.

United States Court of Appeals, Fifth Circuit.

April 9, 1982.

Collins & Jones, Robin Collins, Nacogdoches, Tex., for petitioner.

F. R. Files, Jr., Tyler, Tex., for J. B. Smith.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

COLEMAN, Circuit Judge:

At the time the briefs were filed in this petition for a writ of mandamus, Edward James Sessions was in the Texas penitentiary, convicted of capital murder.

Previously, he had been a pretrial detainee in the Smith County Jail at Tyler.

On March 24, 1980, Sessions filed his individual civil action in federal district court, alleging violations of his Constitutional rights while being disciplined for misconduct in the jail, complaining of jail conditions, seeking injunctive relief, and suing for money damages. Represented by counsel, Sessions was allowed to proceed *informa pauperis*, 28 U.S.C. § 1915. After the case had once been continued, Sessions applied on January 21, 1981, for an order permitting the use of non-stenographic discovery depositions. Rule 30(b)(4) of the Federal Rules of Civil Procedure.[1] On February 6, 1981, the request was denied, with the statement that "The Court having considered the same believes that Plaintiff's application should be denied." Sessions then applied to us for a writ which would direct the District Court to vacate the denial.

In support of his motion the petitioner documented his indigency and set forth precise guidelines for insuring the accuracy, trustworthiness, and integrity of the process for tape recording, transcribing, and filing. Finally, petitioner named ten witnesses whom he wished to depose, along with a brief description of the alleged materiality of what these witnesses "purported" to know about the facts of his case. In the application, Sessions stated that he would provide a notary public to administer the oath to the witnesses and to remain during the taking of the depositions. At the end of the depositions, one of the original tape recordings would be labeled, placed in a sealed envelope, and delivered forthwith into the custody of the Court. The other original tape recording would be kept for possible transcription at the office of peti-

---

1. In part, Fed.R.Civ.P. 30(b)(4) reads as follows:

    The parties may stipulate in writing or the court may upon motion order that the testimony at a deposition be recorded by other than stenographic means. The stipulation or order shall designate the person before whom the deposition shall be taken, the manner of recording, preserving and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy.

tioner's counsel. Then, those portions of the witnesses' testimonies which were transcribed, submitted to the witnesses, and filed with the Court would be subject to any objections to the accuracy of the proffered transcripts.

At this point we note that two of the witnesses proposed for these non-stenographic discovery depositions were the defendant sheriff and the defendant jailer; however, extensive interrogatories had been propounded to and answered by them. Three others were employees at the jail. Five other witnesses (then or former jail inmates) were described as "purported witnesses to events giving rise to Plaintiff's transfer to administrative segregation."

In support of his petition, Sessions argues that

> "Having drawn an application containing enough guidelines to satisfy even the most meticulous judicial sound technician the Petitioner *had reduced the trial court's discretion in granting or denying the application to zero.* The Trial Court's sole discretion was to augment Petitioner's application for the purpose of ensuring accuracy."

(Brief, p. 6, *emphasis added*.)

It is further argued that this Court should exercise its appellate supervisory power to issue the desired writ.

In the context of this case, we are of the opinion that both contentions must fail.

■ We agree that orders denying or directing discovery are interlocutory and are not appealable except as part of the final decision disposing of the case on its merits, that a discovery order such as we have here is not a final order under 28 U.S.C. § 1291, and that an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) is not available. Thus, the only possibly available remedy for Sessions is this application for writ of mandamus. As to all this, see *Branch v. Phillips Petroleum Company*, 638 F.2d 873, 877 (5th Cir. 1981); *Honig v. E. I. duPont deNemours*, 404 F.2d 410 (5th Cir. 1968); *Pacific Union Conference of Seventh-Day Adventists v. Marshall*, 434 U.S.

1305, 1306, 98 S.Ct. 2, 3, 54 L.Ed.2d 17 (1977); 28 U.S.C. § 1651.

■ The "traditional use of the writ in aid of appellate jurisdiction, both at common law and in the federal courts, has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943).

■ We have the power to issue a writ under the All Writs Act, 28 U.S.C. § 1651(a). However, this power is to be used "only in the exceptional case where there is a clear abuse of discretion or 'usurpation of judicial power.'" *Bankers Life & Casualty Company v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953).

■ We have held that before a writ of mandamus may properly issue, three elements are required:

> "(1) the plaintiff must have a clear right to the relief;

> (2) the defendant must have a clear duty to act, and;

> (3) no other adequate remedy must be available."

*Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132, 1141 (5th Cir., 1980); *Winningham v. United States Department of Housing and Urban Development*, 512 F.2d 617, 620 (5th Cir. 1975).

The petitioner relies on *Colonial Times, Inc. v. Gasch*, 509 F.2d 517 (D.C.Cir.1975) which held (J. McKinnon dissenting) that "[T]he range of the trial judge's discretion under Rule 30(b)(4) is limited to those actions necessary to promote accuracy and trustworthiness," 509 F.2d at 522.

The respondent Sheriff and Jailer counter with the decision of the Second Circuit in *UAW v. National Caucus of Labor Committees*, 525 F.2d 323 (1975).

In that case, involving the same Rule 30(b)(4) issue in a clear and cogently reasoned opinion [Friendly, Hays and Feinberg, JJ.] the writ was denied. The *UAW*

opinion analyzed the majority opinion of the D. C. Circuit in *Colonial Times, Inc. v. Gasch, supra* and concluded:

"Moreover, we believe that *Colonial Times* misconceives the scope of the district judge's discretion on Rule 30(b)(4) motions. In the realm of discovery procedure district judges enjoy wide discretion. No reason is suggested in *Colonial Times* to explain why this discretion should be so constricted when a party moves under Rule 30(b)(4)." 525 F.2d at 326.

The Second Circuit specifically held that:

Rule 30(b)(4) does not afford a party an absolute right to record depositions by other than stenographic means. To the contrary, it merely affords the district judge the discretion to allow such a procedure upon motion. As to orders which lie within the discretion of the district judge it is settled law in this Circuit that mandamus will not—indeed, may not—be issued except in the most extraordinary circumstances. *Weight Watchers of Philadelphia, [Inc. v. Weight Watchers Int'l., Inc.]* supra [455 F.2d] at 775; *Donlon Industries, Inc. v. Forte,* 402 F.2d 935, 937 (2d Cir. 1968).

■ While we recognize the existence of these cases from our sister circuits, we believe that we need look no further than the Supreme Court and our own cases for the solution to this controversy. We hold that the Petitioner has not met his burden of demonstrating that he has *a clear right* to the relief sought nor has he established that the District Court had *a clear duty* to grant the motion.

The sheriff and the jailer had been thoroughly explored by extensive, searching interrogatories. We have read those interrogatories and the answers. The umbrella there raised can reasonably be said to have covered what might have been extracted from the three subordinate jail employees. This leaves only the prisoners, who had been on a hunger strike (including other conduct) against the jail administration. It stretches reasonable credulity to think that the prisoners were prepared to give testimony in favor of the authorities. In any event, a simple interview could have settled that point and if anything adverse or hostile, material to the plaintiff's case, had developed then that could have supplied grounds for further application to the Court under 30(b)(4) as to these individuals.

What this all comes down to is that we do not accept the Petitioner's argument that the District Court was totally bereft of discretion and had no choice within the terms of the Rule but to grant the motion.

Moreover, we are not persuaded that this is such an "exceptional case where there is a clear abuse of discretion" which would justify the intervention of our supervisory power.

Obviously, the denial of the writ in the posture in which it comes to us is no foreclosure of the Plaintiff's right in the event of a future appeal from a final judgment to demonstrate, if he can, that the denial of his Rule 30(b)(4) motion amounted to reversible error.

Writ Denied.