730 F.2d 176
 Bankr. L. Rep. P 69,857
In re Ernest DAVIS, Sr., Petitioner.
 No. 83-3782.
 United States Court of Appeals,
Fifth Circuit.
 March 30, 1984.
 
 Gertler & Gertler, M.H. Gertler, New Orleans, La., for appellant.
 Thomas Nosewicz, R. Patrick Vance, New Orleans, La., for Johns-Manville.
 Terry Frieberger, New Orleans, La., for Mine Safety.
 James C. Murphy, Jr., New Orleans, La., for Home Ins.
 Ralph Aucoin, Timothy G. Schafer, New Orleans, La., for Travelers Ins.
 Philip Wittmann, Stephen G. Bullock, New Orleans, La., for Welsh-Norton.
 On Petition for Writ of Certiorari to the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, JOLLY, and DAVIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 After Johns-Manville had filed a petition for corporate reorganization, the bankruptcy court stayed all proceedings against it and its officers. The suits of 279 asbestos workers, who claimed damages for personal injury, were then stayed by the federal district court in which these claims were pending. Counsel for the asbestos workers sought to vacate the stay by seeking certiorari in this court. The bankruptcy court cited him for contempt of its stay order by thus seeking to vacate the stay. Counsel then applied to us for a writ of prohibition to prevent the contempt proceedings. We deny both applications.
 
 I.
 
 2
 Separate suits were filed by 279 asbestos workers alleging that they suffered from asbestosis, cancer caused by inhaling asbestos fibers, and other asbestos-related diseases. The original defendants in all cases were (1) Mine Safety Appliance Company; (2) Norton Company and Textron, Inc.; and (3) Johns-Manville Corporation (Manville), the executive officers of Manville, and the insurers of both Manville and its executive officers--Travelers Insurance Company and Home Insurance Company.[1] The asbestos workers sued Travelers and Home Insurance companies under a Louisiana statute which affords injured persons "a right of direct action against the insurer ... alone, or against the insured and insurer jointly and in solido ...." La.R.S. Sec. 22:655.
 
 
 3
 In 112 cases, the asbestos-worker plaintiffs have settled their claims against Manville and its executive officers, but not with the other defendants. In 247 cases, the asbestos-worker plaintiffs have settled their claims against Mine Safety Appliance Company, but not those against Norton and Textron. The cases, therefore, now fit into three categories, according to the defendants still sought to be held liable. In one group of cases, the only defendant is Norton and Textron. In a second group, the defendants are Manville, Manville's executive officers, the insurers, Norton, and Textron. Mine Safety Appliance is no longer a defendant in these two groups of cases because it has settled with the plaintiffs in each of them. In a third group, 32 cases, no settlements have been reached, and the cases are still pending against all of the original defendants.
 
 
 4
 While these cases were pending, Manville filed a petition for reorganization in the Bankruptcy Court for the Southern District of New York. The petition caused an automatic stay of proceedings against Manville pursuant to 11 U.S.C.A. Sec. 362(a). Thereafter, the District Court for the Eastern District of Louisiana stayed proceedings as to all of the defendants. The plaintiffs sought review by writ of certiorari regarding the cases in the first category, those in which the only defendant is Norton and Textron. That case was consolidated by us with two appeals. In Wedgeworth v. Fibreboard, 706 F.2d 541 (5th Cir.1983), we considered both the two appeals and the asbestos workers' writ application, and held that the automatic stays applied only to Manville, not to the codefendants. We, therefore, vacated each of the district court orders which were predicated only on the automatic stay provisions.
 
 
 5
 In two of the cases considered in Wedgeworth, however, each district court had in addition invoked its own discretionary power to grant a stay against the codefendants in the interest of justice and in control of its docket. Quoting Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 164-65, 81 L.Ed. 153 (1936), we held that, in considering whether or not to enter a stay, a district court must balance the interests involved. 706 F.2d at 545. "The party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding," we said. It "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else. Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[2] The court must also "carefully consider the time reasonably expected for resolution of the 'other case,' for 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'[3] ... Thus, a stay must be 'so framed in the inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.' Landis, 299 U.S. at 257, 57 S.Ct. at 167."
 
 
 6
 We concluded that "the hardship of a stay on the plaintiffs, many of whom allege that they are dying from asbestosis, is substantial and, in some instances, permanent. The grim reaper has called while judgment waits. Just as obviously, the bankruptcy proceedings are not likely to conclude in the immediate future. A stay hinged on completion of those proceedings is manifestly 'indefinite.' " 706 F.2d at 545. Finding no "clear case" of hardship against or inequity to the co-defendants sufficient to offset the prejudice to the plaintiffs, we vacated the stays.[4]
 
 
 7
 Thereafter, on September 15, 1983, the bankruptcy court issued an order (the "September order") that modified its prior orders. It expressly stayed "any and all suits against any past, present or future Manville officer, director or employee or against [his or her] insurers."[5] It added that this paragraph "will be modified and amended regarding the impact of these findings and conclusions on the discovery rights of the parties," such modification to be detailed in a separate order.
 
 
 8
 On October 6, one day before the bankruptcy court issued its promised supplemental order (the October order), the Louisiana district court, in response to the asbestos workers' motion to compel discovery against Travelers Insurance Company, stayed the proceedings pending before it to the extent prescribed in the September bankruptcy court order. Imputing to the September order a scope beyond its express terms, the district court also stayed discovery against Travelers Insurance Company which was the insurer both of Manville and its officers, directors, and employees. The court reasoned that, although the bankruptcy court had not explicitly stayed discovery against the insurer, the Travelers policy was issued to Manville and afforded coverage to the described individuals "in [Travelers'] capacity as Johns-Manville's insurer." Hence, the district court considered the bankruptcy court's failure to stay discovery against Travelers in its capacity as insurer of the individuals to be inadvertent, and sought to afford the bankruptcy court a reasonable time to fashion appropriate discovery provisions. The district court declined to certify its order for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b).
 
 
 9
 The district court's perspicacity was confirmed the next day when the bankruptcy court issued the October order. That order modified the April order to enjoin "all entities" from "commencing, conducting, or continuing any discovery proceedings against Manville's insurers in any direct action suits...."
 
 
 10
 Counsel for the asbestos workers, meanwhile, had not been idle. On the New York front, counsel filed a notice that he was appealing the bankruptcy court's September order to the district court for the Southern District of New York (the New York district court). The bankruptcy court issued its October order before that appeal was docketed, however, so counsel filed another notice of appeal, this time from the October order, on November 7. Returning to Louisiana, counsel then petitioned this court for a writ of certiorari to obtain relief from the Louisiana district court's stay. Thereafter, counsel, back again in New York, notified all parties and the bankruptcy court of his intention to move for relief from that court's stays pursuant to 11 U.S.C. Sec. 362(d).[6] Alternatively, counsel requested an order modifying the stays to permit the suits against defendants other than Manville to proceed to judgment, but not to enforcement of a judgment. The asbestos workers' counsel subsequently requested that his motion be adjourned sine die.
 
 
 11
 Manville then countered by obtaining from the bankruptcy court an order commanding counsel for the asbestos workers to show cause why he should not be held in contempt for violating the bankruptcy court's stays by seeking a writ of certiorari from this court. The asbestos workers' counsel responded by petitioning this court for a writ of prohibition directed against the show cause order in the bankruptcy court. To give us time to act on that motion, that court postponed the hearing date on the show cause order until February 23.
 
 
 12
 We later denied the petition for writ of prohibition "without prejudice to the right of petitioner to renew it should [the] necessity appear and also without implying either that this Court has jurisdiction [to issue such a writ] or [that] the petition has merit." Thereafter, we denied the asbestos workers' petition for a writ of certiorari. In the light of these developments, the bankruptcy court continued contempt proceedings "without date."
 
 At present, then, this is the situation:
 
 13
 1. The Louisiana district court has enforced, by its own stay order, the order of the bankruptcy court staying:
 
 
 14
 a. Suits and discovery against Manville and its insurers.
 
 
 15
 b. Suits against any past, present or future officers, directors or employees of Manville, or against their insurers in direct action suits.
 
 
 16
 c. Discovery proceedings against or directed to Manville's current employees, agents, and others not named individually as parties.
 
 
 17
 The stay applies only to those proceedings specified by the bankruptcy court: suits against Manville, its past, present, or future officers, directors, or employees and their insurers. Proceedings against the codefendants Norton Company, Textron, Inc., and Mine Safety Company may continue in their normal course.
 
 
 18
 2. Two appeals by the asbestos workers from the bankruptcy court's orders are pending in the New York district court.
 
 
 19
 3. The asbestos workers' motion for relief from the bankruptcy court's stay order is pending in the bankruptcy court.
 
 
 20
 4. The bankruptcy court contempt proceeding has been continued with no date having been set for a hearing.
 
 II.
 
 21
 The petition that sought to have us vacate the stay of proceedings in the district court is denominated a petition for writ of certiorari. Certiorari is a remedy for the correction of errors of law apparent on the record.[7] To the extent, therefore, that the application seeks relief for the correction of such an error, it is properly labelled.[8] Mandamus, on the other hand, is the proper remedy to control procedural decisions of district courts when no other adequate means of seeking relief is available.[9] Under the All Writs Act, however, the form of the writ is of less importance than the substantive question whether an extraordinary remedy is available.[10] In connection with applications for writs of mandamus and orders seeking the stay of district court proceedings, we have developed a body of rules concerning the circumstances under which relief from an interlocutory ruling will be granted. We apply those rules here, principally because, regardless of the title given the writ, what is sought is review of a stay order, review that we have usually accomplished only by appeal under Sec. 1292(b) or by mandamus. Regardless of the form of the writ we base jurisdiction on the All Writs Act, 28 U.S.C. Sec. 1651(a).
 
 
 22
 Mandamus is an extraordinary remedy, which should be invoked only in the clearest and most compelling cases. Kerr v. United States District Court for the Northern District of California, 426 U.S. 394, 402-03, 96 S.Ct. 2119, 2123-24, 48 L.Ed.2d 725 (1976); In re Sessions, 672 F.2d 564 (5th Cir.1982). In general, the petitioner seeking such an order must show that no other adequate means exists to attain the requested relief and that his right to issuance of the writ is "clear and indisputable." 426 U.S. 402, 96 S.Ct. at 2123, 48 L.Ed.2d at 732; See Sessions, supra, and cases cited therein.[11]
 
 III.
 
 23
 The asbestos workers contend that Northern Pipeline Construction Co. v. Marathon Pipe Line Co.[12] precludes the Bankruptcy Courts from staying actions in the district courts against Manville's insurers, and, we presume, against the executives' insurers. They further contend that the interim rules adopted by the Second Circuit courts do not provide the bankruptcy court with jurisdiction. Finally, the asbestos workers argue that even if Marathon did not obliterate all bankruptcy court jurisdiction, the bankruptcy court's orders in this case exceed the scope of whatever jurisdiction that court retains.
 
 
 24
 Like the Louisiana district judge, we read the bankruptcy court order as directed only to the litigants, and not as an attempt to restrain federal district courts from the exercise of their constitutional power. We, therefore, confine ourselves to the question whether Marathon, or some other limitation on bankruptcy court jurisdiction, provides a "clear and indisputable" right to relief from the bankruptcy court stay. For present purposes, we assume, without deciding, that the district court has discretion to disregard the bankruptcy court's orders.[13]
 
 
 25
 This circuit, and every other one that has ruled on the issue, has refused to accord Marathon the broad sweep urged by petitioners. The Bankruptcy Reform Act of 1978, Pub.L. 95-598, expanded the jurisdiction of bankruptcy courts to include original jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. Sec. 1471. In Matter of Braniff Airways, 700 F.2d 214, 215 (5th Cir.) (per curiam), cert. denied, --- U.S. ----, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983), "we conclude[d] that 28 United States Code Secs. 1471(a) and (b) were not invalidated by the Marathon decision, but if they were, nevertheless, the jurisdictional grant of 28 United States Code Sec. 1334[14] remains effective during the transitional period." (Footnote omitted).[15] The Sixth Circuit, in a thorough opinion, reached the same conclusion.[16] That court read the Marathon opinion, as limited by the concurring opinion of Justices Rehnquist and O'Connor, to hold unconstitutional only 28 U.S.C. Sec. 1471(c)--the section purporting to vest direct and nonderivative jurisdiction in the bankruptcy courts.[17] Under the interim rules, adopted in substantially the same form by the judicial councils of each circuit, the district courts exercise the power to refer bankruptcy cases to bankruptcy courts that they had employed under the Chandler Act. This referral is automatic, but is subject to numerous safeguards to address the concern articulated by the Marathon plurality: that "the essential attributes of judicial power are retained in the Art. III court."[18] These safeguards include the following: referrals may be withdrawn by the district court at any time for any reason; only the district court has power to enter a final judgment in a "related case" (i.e. a Marathon -type case) unless the parties consent to disposition by a bankruptcy judge; all bankruptcy court orders are subject to de novo review in the district courts, review is mandatory for orders in related matters and upon motion of the parties or sua sponte by the court in traditional proceedings. See White Motor Corp. v. Citibank, N.A., 704 C.2d 254, 256-57 (6th Cir.1983). Section 1334, which vests original jurisdiction over bankruptcy proceedings in the district courts exclusive of the states, provides an alternative jurisdictional basis during the transitional period or at least until April 1, 1984, when Sec. 1334 is to be amended to give the district courts only appellate jurisdiction over bankruptcy matters.[19]
 
 
 26
 Finally, the present matter bears little resemblance to the situation in Marathon. In that case the bankruptcy court adjudicated to final judgment the debtor's contract claim against a third party, a claim that was based entirely on state law. These proceedings, however, involve interlocutory orders--issued under the bankruptcy laws--staying actions found to be detrimental to the estate. In Marathon, the debtor's claim would have been solely a matter for state courts absent Sec. 1471(c) or diversity jurisdiction; the present dispute over the stay orders hardly could arise outside the bankruptcy context.
 
 
 27
 In support of their assertion that the bankruptcy court exceeded whatever jurisdiction may have survived Marathon, the asbestos workers cite several bankruptcy court cases that have plumbed the depths of Sec. 1471(b) jurisdiction over "proceedings arising under title 11 or arising in or related to cases under title 11." They also rely on Collier on Bankruptcy, which states:
 
 
 28
 [T]here must be some reasonable nexus between a particular civil proceeding and the title 11 case to bring that proceeding within the section 1471(b) grant of jurisdiction.... [T]here is a limited class of civil proceeding the nature of which is such that there is no logical connection of any kind between that proceeding and the title 11 case. Those cases fall without the comprehensive grant of jurisdiction of section 1471.[20]
 
 
 29
 The asbestos workers assert that no "reasonable nexus" exists between their direct action suits against Travelers Insurance Co. and the Manville bankruptcy proceedings.
 
 
 30
 We do not agree with that conclusion. In each of the cases cited to us there was no real link between the third-party dispute and the bankruptcy estate.[21] By contrast, both the bankruptcy court and the New York district court have found that direct actions and discovery against the insurers of Manville and its executive officers pose a significant threat to the estate.[22]
 
 
 31
 The Bankruptcy Reform Act arms bankruptcy courts with broad powers, analogous to those of a court of equity, to protect the estate. First, 28 U.S.C. Sec. 1471(e) confers jurisdiction on the bankruptcy court over "all of the property, whereever [sic] located, of the debtor...." Second, under 11 U.S.C. Sec. 105(a) a bankruptcy court is authorized, once jurisdiction is established, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This provision includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate.[23] Because we have construed the stay order as directed to the litigants rather than any courts, we have no occasion to consider the effect of the limitation on the bankruptcy court's power contained in 28 U.S.C. Sec. 1481:
 
 
 32
 A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment. (emphasis added).
 
 
 33
 The bankruptcy court therefore has authority to issue a stay order intended to shield the insurers of Johns-Manville and its executives if the insurance policies constitute "property of the estate." That term is defined by 11 U.S.C. Sec. 541(a)(1) to include "all of the following property, wherever located: (1) [subject to several exceptions not here relevant], all legal or equitable interests of the debtor in property as of the commencement of the case." In upholding the bankruptcy court's stay of direct actions against Manville's insurers, the New York district court held that Sec. 541(a)(1) embraced insurance within the definition of "property of the estate." Johns-Manville Corp. v. The Asbestos Litigation Group (In re Johns-Manville ), 40 B.R. 219, (S.D.N.Y. 1984) (affirming bankruptcy court's stay orders). Although the asbestos workers find some support in Collier on Bankruptcy[24] for their challenge to this finding, the weight of authority supports the New York district court's conclusion.[25]
 
 
 34
 We conclude, therefore, that the asbestos workers have failed to demonstrate a clear and indisputable right to extraordinary relief. Given the benefit of the assumption that the Louisiana district court had discretion to exercise, the asbestos workers have not shown that it abused its discretion by enforcing the bankruptcy court's stays. When the district courts whose actions were reviewed in Wedgeworth entered stays, the bankruptcy court had neither defined the bankrupt estate as including the insurance policies nor issued a specific stay order. Since that time the bankruptcy court has made specific findings of fact as to the effect of discovery and litigation on the debtor's estate, and as to the significance of intact insurance coverage as a bulwark against erosion of the estate.[26]
 
 IV.
 
 35
 The petition fails also because adequate relief is available by other means. The harm the asbestos workers complain of--delay in proceeding to judgment--is caused by the Louisiana district court's interpretation and enforcement of the bankruptcy court's stay order. Their real grievance arises from that order. They may obtain direct interlocutory review of that order in the New York district court or the Second Circuit.[27] Additionally, 11 U.S.C. Sec. 362(d) provides a mechanism for seeking relief from a stay by motion in the bankruptcy court.[28] The asbestos workers have demonstrated their ability to invoke these processes. Relief by extraordinary writ may be had only when no other remedy is available.
 
 
 36
 No alternative remedy existed in Wedgeworth because, at the time that case was decided, the bankruptcy court had entered no appealable order.
 
 V.
 
 37
 Counsel also seek to deflect the contempt citation by seeking a writ of prohibition. The show cause order seemed intended to punish counsel for seeking a writ of certiorari from this court. While we had the petition for certiorari under advisement, the bankruptcy court continued the show cause order; that continuation is now indefinite.
 
 
 38
 It is entirely possible, indeed likely, that the bankruptcy court will dismiss the show cause order upon learning that we have denied the asbestos workers relief from the Louisiana district court's order. We decline the invitation to consider confronting another court over a matter that may become moot. We note, however, that our denial of the petition is without prejudice, should it become necessary for counsel to seek relief.
 
 
 39
 For the foregoing reasons, the petition for writ of certiorari is DENIED. The petition for writ of prohibition is DENIED without prejudice to the right of petitioner to renew it should the necessity appear and also without implying either that this Court has jurisdiction to issue a writ of prohibition or that the petition has merit.
 
 
 
 [1]
 The asbestos workers contend that respirators manufactured by Mine Safety Appliance Company, Norton Company, and Textron, Inc., and used in the plant where they worked were defective. Johns-Manville is a manufacturer of asbestos products with a plant located in Louisiana. The asbestos workers allege that their injuries were caused by asbestos fibers inhaled at this plant and in the surrounding area
 
 
 [2]
 Landis v. North American Co., 299 U.S. at 255, 57 S.Ct. at 166, 81 L.Ed. at 158 (1936)
 
 
 [3]
 We cited McKnight v. Blanchard, 667 F.2d 477, 479 (5th Cir.1982) and CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284 (11th Cir.1982), cert. denied, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983)
 
 
 [4]
 Other circuits have reached the same result. See, e.g., Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194 (6th Cir.1983); Williford v. Armstrong World Industries, Inc., 715 F.2d 124 (4th Cir.1983)
 In a portion of the opinion titled "Direct Action," which dealt with one of the appeals involved in Wedgeworth, we also held that a district court had abused its discretion in refusing to allow the plaintiffs in those cases to amend their complaint to add, as defendants, the asbestos manufacturers' insurers pursuant to Louisiana's direct action statute, La.R.S. Sec. 22:655. 706 F.2d at 547. We added that neither an automatic stay under 11 U.S.C. Sec. 362 nor a discretionary stay should bar suits against the insurers. Subsequently, however, we recalled and vacated "that portion of our original opinion ... entitled 'Direct Action,' " and ruled that the district court did not abuse its discretion in declining to allow the plaintiffs to amend their complaint. Id. at 548.
 
 
 [5]
 The relevant paragraph of the September Order reads:
 
 
 [14]
 This court's Counter-Order on Decision No. 2 is hereby amended by adding thereto a new paragraph designated as paragraph No. "1" which shall read as follows
 
 
 [1]
 All entities are hereby stayed, restrained and enjoined from commencing, conducting or continuing any suits against any past, present or future officer, director or employee of Manville or against their insurers in direct action suits whether such direct action suits arise by statute or at law or in equity
 
 
 [6]
 11 U.S.C. Sec. 362 provides:
 (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section [providing for an automatic stay], such as by terminating, annulling, modifying, or conditioning such stay--
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 (2) with respect to a stay of an act against property, if--
 (A) the debtor does not have an equity in such property; and
 (B) such property is not necessary to an effective reorganization.
 
 
 [7]
 2 Federal Procedure, L.Ed. Sec. 3:368 (1981)
 
 
 [8]
 As mentioned above, a petition for writ of certiorari brought before us some of the cases considered in Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (5th Cir.1983)
 
 
 [9]
 2 Federal Procedure, L.Ed. Sec. 3:371 (1981)
 
 
 [10]
 See generally 16 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3932 pp. 206-208 (1977). Cf. In re Simons, 247 U.S. 231, 239-40, 38 S.Ct. 497, 498, 62 L.Ed. 1094 (1918) (Holmes, J.)
 
 
 [11]
 But cf. Schlagenhauf v. Holder, 379 U.S. 104, 111, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964); In re EEOC, 709 F.2d 392, 394 (5th Cir.1983) (mandamus appropriate if resolution of an important, undecided issue will forestall future error in trial courts, will eliminate uncertainty, and will add significantly to the efficient administration of justice)
 
 
 [12]
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Federal Procedure, L.Ed. Sec. 3:371 (1981)
 
 
 [13]
 Other circuits have regarded as binding an automatic stay of actions against the debtor issued by a bankruptcy court pursuant to 11 U.S.C. Sec. 362(a). See, e.g., Ellison v. Northwest Engineering Co., 707 F.2d 1310 (11th Cir.1983); Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir.1982); Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 690 F.2d 367 (3d Cir.1982)
 We have given binding effect to stays ordered by a district court under 11 U.S.C. Sec. 362(a), while recognizing the jurisdiction of other courts to determine whether any of the statutory exceptions applied. SEC v. First Financial Group of Texas, 645 F.2d 429 (5th Cir.1981). In an earlier case, we upheld, on grounds of comity, the decision of a district court sitting in Texas to honor an injunction issued against it by a district court presiding over bankruptcy proceedings in Florida. In re Cohen, 107 F.2d 881, 883 (5th Cir.1939).
 
 
 [14]
 28 U.S.C. Sec. 1334 provides: "The district courts shall have original jurisdiction, exclusive of the states, of all matters and proceedings in bankruptcy."
 
 
 [15]
 Accord In re Hansen, 702 F.2d 728 (8th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574 (2d Cir.1983)
 
 
 [16]
 White Motor Corp. v. Citibank, N.A., 704 F.2d 254 (6th Cir.1983)
 
 
 [17]
 704 F.2d at 260. 28 U.S.C. Sec. 1471(c) provides "The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district court."
 
 
 [18]
 458 U.S. at 81, 102 S.Ct. at 2876, 73 L.Ed.2d at 621
 
 
 [19]
 Several district courts and bankruptcy courts have held that Marathon invalidated Sec. 1471 in its entirety and thus vitiated the bankruptcy courts' jurisdiction along with any jurisdictional grant to the district courts. See, e.g., In re Williamson, 28 B.R. 276 (Bkrtcy.M.D.Ga.1983); In re Wildman, 30 B.R. 133, 10 B.C.D. 668 (Bkrtcy.Ct.N.D.Ill.1983); In re Johnson County Gas Co., Inc., 30 B.R. 690, 10 B.C.D. 885 (Bkrtcy.Ct.E.D.Ky.1983); In re South Portland Shipyard and Marine Railways Corp., 31 B.R. 770, 10 B.C.D. 1012 (Bkrtcy.Ct.D.Me.) aff'd, 32 B.R. 1012, 10 B.C.D. 1385 (D.C.Me.1983); In re Conley, 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983); In re Motion to Dismiss, Constitutionality of Jurisdiction of the Bankruptcy Court, 23 B.R. 334 (Bkrtcy.N.D.Ga.1982); In re Schear Realty & Investment Co., 25 B.R. 463 (Bkrtcy.S.D.Ohio 1982). Our decision in Braniff, supra, requires us to reject the position taken by these courts
 A different three-judge panel in the Sixth Circuit stated, in dicta, that "a plurality of six justices concluded [in Marathon ] that the jurisdictional grant of Sec. 1471 was unconstitutional in toto and could not be redeemed through division or severance of offending exercises of jurisdiction." Rhodes v. Stewart, 705 F.2d 159, 160 (6th Cir.1983).
 
 
 [20]
 1 L. King, Collier on Bankruptcy p 3.01, 3-46 (15th ed. 1982)
 
 
 [21]
 The cases cited by the asbestos workers involved matters plainly outside the expansive reach of Sec. 1471(b). For example, in In re Universal Profile, 6 B.R. 190 (Bkrtcy.N.D.Ga.1980), the bankruptcy court declined to assert jurisdiction over a third-party complaint by the former wife of the debtor corporation's sole shareholder, director, and officer, objecting to the sale of certain property of the bankrupt. She claimed that the property was subject to a divorce agreement, and alleged fraud and anticipatory breach of that agreement. Similarly, In re Chong, 12 B.R. 255 (Bkrtcy.D.Hawaii 1981), involved a third-party, common-law fraud claim that the bankruptcy court determined could have no impact on the debtor's estate. See also In re Haug, 19 B.R. 223 (Bkrtcy.D.Or.1982) (third-party fraud claim did not involve trustee, administration of estate, or issue of dischargeability)
 
 
 [22]
 See In re Johns-Manville Corp., 26 B.R. 420, 435-36 (Bkrtcy.S.D.N.Y.1983) (on motion for rehearing); In re Johns-Manville Corp., 33 B.R. 254, 260-62 (Bkrtcy.S.D.N.Y.1983); Johns-Manville Corp. v. The Asbestos Litigation Group (In re Johns-Manville ), 40 B.R. 219, (S.D.N.Y. 1984) (affirming bankruptcy court's stay orders)
 
 
 [23]
 See, e.g., SEC v. First Financial Group of Texas, 645 F.2d 429, 440 (5th Cir.1981); In re Chanticleer, 592 F.2d 70, 73-74 (2d Cir.1979) (dictum); State of Missouri v. United States Bankruptcy Court, 647 F.2d 768, 776 (8th Cir.1981); In re Northern Boneless Meat Corp., 9 B.R. 27, 29 (Bkrtcy.S.D.N.Y.1981). See generally 2 L. King, Collier on Bankruptcy p 105.02 105-2 to 105-3
 
 
 [24]
 4 L. King, Collier on Bankruptcy p 541.01 at 541-7:
 Section 541 will not apply in those instances where property which ostensibly belongs to the debtor is, in reality, held by the debtor in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance and the insurance company had sent payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed. The payment would not, therefore, become property of the estate pursuant to section 541.
 (citing H.Rep. No. 595, 95th Cong., 1st Sess. 367-68 (1977); S.Rep. No. 989, 95 Cong., 2d Sess. 82-3 (1978)), U.S.Code Cong. & Admin.News 1978, p. 5787.
 
 
 [25]
 Compare 2 L. King, Collier on Bankruptcy Sec. 362.07 362-51 (15th ed. 1981) ("where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff.") with In re Cahokia Downs, Inc., 5 B.R. 529, 531 (Bkrtcy.S.D.Ill.1980) (fire insurance policy is an asset of the estate and a necessary protection for both the debtor and its creditors); In re Bragg's Electric Construction Co., 6 B.R. 619 (Bkrtcy.E.D.Ark.1980) (insurance coverage is "property of the estate"--dictum); In re Pearl-Wick Corp., 15 B.R. 143 (Bkrtcy.S.D.N.Y.1981), aff'd 26 B.R. 604 (D.C.S.D.N.Y.1982); aff'd, 697 F.2d 295 (2d Cir.1982); In re Moskowitz, 13 B.R. 357 (Bkrtcy.S.D.N.Y.1981); In re Norman Industries, 1 B.R. 162 (Bkrtcy.W.D.La.1979)
 Compare supra note 24 with Johns-Manville Corp. v. The Asbestos Litigation Group, supra, 40 B.R. at 230,:
 The scope of this paragraph [Sec. 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property specified in Section 70a of the Bankruptcy Act.
 United States v. Whiting Pools, --- U.S. ----, 103 S.Ct. 2309, 2313, n. 9, 76 L.Ed.2d 515 (1983) quoting H.R.Rep. No. 95-595, p. 267 (1977); S.Rep. No. 95-989, p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5568, 6323.
 In Whiting Pools, the Supreme Court held that the reorganization estate includes property of the Debtor which has been seized by a creditor prior to the filing of the bankruptcy petition. In so ruling, the Court stressed that "both the congressional goal of encouraging reorganization and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." Id. at 2313 (emphasis added).
 
 
 [26]
 The bankruptcy court's determinations reflect its conclusion that the integrity of the debtor's estate must be preserved to provide an equitable distribution of recovery among future as well as present claimants. See, e.g., In re Johns-Manville Corp., 36 B.R. 743 (Decision and Order on Keene's Motion to Appoint a legal representative for Future Claimants, Jan. 23, 1984)
 
 
 [27]
 See 28 U.S.C. Secs. 1334 or 1482(b). See generally 1 L. King, Collier on Bankruptcy p 3.03[D][N] (15th ed. 1982)
 
 
 [28]
 See supra note 6