In re Margarito **REYES**, et al., Petitioners.

No. 86–1773.

United States Court of Appeals, Fifth Circuit.

March 30, 1987.

As Amended on Denial of Rehearing June 16, 1987.

Viviana S. Patino, Randall C. Marshall, Texas Rural Legal Aid, Inc., Farm Div., Hereford, Tex., for petitioners.

Ricardo H. Hinojosa, U.S. Dist. Judge, Brownsville, Tex., Allee & Garcia, Edinburg, Tex., for respondent.

Petition for Writ of Mandamus.

Before POLITZ, WILLIAMS and JONES, Circuit Judges.

BY THE COURT:

Margarito Reyes and other petitioners seek a writ of mandamus to direct the district court to withdraw a discovery order. Petitioners have brought suit claiming rights under the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §§ 1801, et seq. (AWPC) and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA). Petitioners also claim breach of contract of employment under Texas law. Petitioners as migrant farm workers are represented by the Texas Rural Legal Aid, a legal services corporation recipient within the meaning of the Legal Services Corporation Act, 42 U.S.C. §§ 2996 et seq. (LSCA).

As part of a discovery order the district court directed petitioners to respond to the following questions:

Are you a citizen of the United States? If so, were you born in the United States? If so, please state where you were born and your birthdate. If you are a naturalized citizen of the United States, please state where and when you became a citizen of the United States. If you are not a citizen of the United States, please state your immigration status.

The district court granted discovery as to these matters on two grounds. First, a legal services corporation is not entitled to represent undocumented aliens, and second, there is an issue of coverage of undocumented aliens under the Migrant and Seasonal Agricultural Workers Protection Act and the Fair Labor Standards Act.

■ First, the issue as to whether a legal services corporation under the LSCA can represent undocumented aliens is not an issue which is subject to litigation in this case. Congress was clear, precise, and adamant with respect to this issue. It provided in 42 U.S.C. § 2996e(b)(1)(B):

No question of whether representation is authorized under this subchapter, or the rules, regulations or guidelines promulgated pursuant to this subchapter shall be considered in, or affect the final disposition of, any proceeding in which a person is represented by a recipient or an employee of a recipient.

There is no authority, therefore, to inquire into the documentation of aliens to determine whether the Texas Rural Legal Aid, Inc., Farm Worker Division, has authority to represent the petitioners in this case. In holding that the inquiry was relevant for this purpose, the district court was in error.

■ Second, it is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. An employee is "any individual employed by an employer." FLSA, 29 U.S.C. § 203(e)(1). The same thing is true with respect to claiming the benefits of the AWPA. The statute covers "an individual" employed in agricultural work, AWPA, 29 U.S.C. § 1802(8)(A), unless the aliens involved are in that class of aliens referred to as "H-2" workers, as defined under 8 U.S.C. § 1101(a)(15)(H)(ii). H-2 workers constitute a very narrow class of aliens under a specific work program. There is no issue raised in this case concerning the possibility that petitioners are H-2 workers. The district court, therefore, was also in error in concluding that inquiry into the documentation of alien petitioners for purposes of determining coverage under the FLSA and AWPA was warranted.

■ A discovery order generally is not appealable. *Honig v. E.I. duPont de Nemours & Co.*, 404 F.2d 410 (5th Cir.1968). The district court, however, in this case ordered discovery as to information which was completely irrelevant to the case before it and was information that could inhibit petitioners in pursuing their rights in the case because of possible collateral wholly unrelated consequences, because of embarrassment and inquiry into their private lives which was not justified, and also because it opened for litigation issues which were not present in the case.

■ A writ of mandamus is justified as requested by petitioners under the All Writs Act, 28 U.S.C. § 1651(a), since its purpose here is "to confine an inferior court to a lawful exercise of its prescribed jurisdiction...." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). As we said en banc in *United States v. Denson*, 603 F.2d 1143, 1145 (5th Cir.1979), "[W]hen the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course." *Schlazenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), stands for the proposition that "there has been a general loosening of the federal attitude toward mandamus and the discovery cases are not unaffected by this." Wright & Miller, 8 FEDERAL PRACTICE & PROCEDURE § 2006. *See also Sanderson v. Winner*, 507 F.2d 477

(10th Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975), which held that a writ of mandamus was appropriate to vacate a discovery order in an antitrust case. The order required plaintiffs to disclose current financial statements as well as fee arrangements with attorneys. The writ was issued on the ground that the order went beyond a Supreme Court decision and interfered with Fed.R.Civ.P. 23 on class actions. If mandamus lies in such an antitrust context, there is much stronger justification in this case where there is no possible relevance and the discovery could place in jeopardy unrelated personal status matters.

The procedural requirements of Fed.R. App.P. 21 having been fully met in this case, it is ORDERED that a writ of mandamus issue directing the district court to withdraw that portion of its discovery order requiring petitioners to answer questions concerning citizenship and alienage, including alienage status as documented or undocumented.

In issuing the writ of mandamus we do not undertake to foreclose in any way consideration on the merits of whether these petitioners are entitled to claim coverage and benefits under the FLSA and the AWPA.

WRIT OF MANDAMUS GRANTED.

EDITH H. JONES, Circuit Judge, dissenting:

The majority takes the extraordinary step of granting a writ of mandamus on a discovery matter because it considers the plaintiffs' citizenship status "completely irrelevant to the case." *Cf. In re Sessions,* 672 F.2d 564 (5th Cir.1982); *Kerr v. U.S. District Court,* 511 F.2d 192 (9th Cir.1975), affirmed, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (refusing to issue mandamus on discovery matters). Mandamus should issue only "to compel the performance of a legal duty which is free of doubt." *Winningham v. HUD,* 512 F.2d 617, 620 (5th Cir.1975). Because I disagree that such information is without a shred of relevancy and that the district judge manifestly was without jurisdiction to permit the discovery, I respectfully dissent.

First, a matter with which I have no quarrel. The majority accurately reject the district court's justification of this discovery insofar as it relates to the authority of the Texas Rural Legal Aid Association to represent undocumented aliens. Although employees of the Legal Services Corporation are prohibited from representing undocumented aliens, 45 C.F.R. § 1626 (1986), the Legal Services Corporation Act does not permit inquiry for this purpose. It should be noted, however, that the defendants have never sought to justify their discovery request on that basis.

Assuming plaintiffs may sue under the AWPA, the nature of their AWPA action makes their immigration status relevant. Plaintiffs allege that they are migrant farm workers, as opposed to seasonal farm workers. The key distinction between the AWPA definitions of migrant and seasonal farm workers is that migrant workers are those who are required to be absent overnight from their permanent place of residence. 29 U.S.C. § 1802(8)(A). The plaintiffs' permanent place of residence is thus a material issue in this case. The plaintiffs' immigration and residency status, while not dispositive, clearly could lead to the discovery of relevant evidence in this area. It is not uncommon for Mexican citizens to have their permanent residence South of the Border, but to live with relatives or for short periods of time in the U.S. while work is available. Plaintiffs who live thus would not be "migrant" workers under the AWPA, because they would not be away overnight from their permanent residence in Mexico, but only from their temporary quarters.

I also take issue with the majority's conclusion that the AWPA and the Fair Labor Standards Act do not distinguish between citizens and illegal alien employees. Previously, no court has explicitly permitted an undocumented alien to recover the damages and penalties provided for in those statutes. Moreover, the AWPA specifically prohibits the employment of undocumented aliens by farmers and farm labor contractors. 29 U.S.C. § 1816. The entire thrust of the AWPA is to enhance and

create minimum standards for the working conditions of American and a very limited class of documented foreign workers employed in domestic agriculture. To the extent the statute's prohibition on hiring undocumented aliens is intended to discourage illegal migration of farm workers from other countries, that purpose is undercut by allowing those farm workers to sue and recover benefits on a par with legally employed workers. The impact of the alien hiring prohibition has not been definitively briefed by either party at any time, and the district court afforded discovery of plaintiffs' immigration status precisely because he felt the issue to be open. So do I. At a time when the problem of illegal immigration into this country is so severe, the competition for entry-level employment along the south Texas border fierce, and the economic pressures on the agriculture industry stringent, I believe we should not rush to broaden farmers' liability in the context of a factually- and legally-undeveloped mandamus proceeding. At the very least, it is imprudent to mandamus the district court in an area of "doubtful law." *See In re Cajun Electric Power Cooperative, Inc.*, 791 F.2d 353, 365 (5th Cir.1986) (mandamus proper only where there is a "clear and indisputable abuse of discretion or usurpation of judicial power"); *Sporck v. Peil*, 759 F.2d 312, 314 (3d Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 232, 88 L.Ed.2d 230 (1986) (mandamus available only where there is a "clear error of law"); *United States v. Mehrmanesh*, 652 F.2d 766, 770 (9th Cir.1980) (mandamus inappropriate in case involving a statute devoid of precedent and subject to differing interpretations).

Finally, I am not unsympathetic to the claim that revelations of immigration status may be harmful to plaintiffs even if it is material to the defense. Such an evaluation is, however, within the district court's discretion in the first instance. Any extremely severe collateral consequences of the disclosures might be remedied by a protective order. Fed.R.Civ.Proc. 26(c).

As the information requested is relevant to material issues in the case, the district court cannot be said to have been acting beyond its lawful authority in compelling its production. The extraordinary remedy of a writ of mandamus is thus not justified.

I DISSENT.