**Silvia CONTRERAS, Plaintiff,**

v.

**CORINTHIAN VIGOR INSURANCE BROKERAGE, INC., a California corporation, Defendant.**

**No. C–98–2701 SC.**

United States District Court, N.D. California.

Oct. 26, 1998.

**1054**

Christopher Ho, Marielena Hincapie, Employment Law Center, Legal Aid Society of San Francisco, San Francisco, CA, for plaintiff.

R. Richard Williams, Santa Rosa, CA, for defendant.

### ORDER RE: DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE MOTION TO STRIKE

CONTI, District Judge.

## I. INTRODUCTION

In the above captioned case, Plaintiff Silvia Contreras ("Contreras") brings an action against her former employer, Defendant Corinthian Vigor Insurance Brokerage, Inc. ("Corinthian"), for retaliation in violation of Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219 ("FLSA"). Contreras seeks declaratory and injunctive relief, compensatory and punitive damages, attorney's fees, and costs of suit. In the instant motion, Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike Plaintiff's claim for punitive damages.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts which would entitle her or him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246 (9th Cir. 1997); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Moreover, "[t]o dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Plaine v. McCabe,* 797 F.2d 713, 723 (9th Cir.1986).

### B. *MOTION TO STRIKE*

Motions to strike pursuant to Federal Rule of Civil Procedure 12(f) are appropriate to challenge "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). Such motions are disfavored. *See Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991); *United States v. Iron Mtn. Mines,* 812 F.Supp. 1528, 1535 (E.D.Cal.1992); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

### III. *BACKGROUND*

Plaintiff Contreras was employed by Ms. Lindsey A. Cameron, dba Corinthian Vigor Insurance Brokerage, from approximately June 1995, to January 5, 1997, and by Defendant Corinthian from approximately January 6, 1997 until on or about March 25, 1997. She worked as a secretary for Defendant, a company which sells commercial insurance to truck drivers.

Plaintiff alleges that Defendant caused her to be reported to the Immigration and Naturalization Service ("INS") for the purpose of bringing to the attention of the INS allegations concerning Contreras' immigration status. Plaintiff further alleges that this report constituted retaliation for her prior filing of a claim against Defendant for unpaid wages and overtime pay pursuant to Section 98 of the California Labor Code with the California Department of Industrial Relations, Division of Labor Standards Enforcement ("Labor Commissioner"). As a result of Defendant's communication with the INS, Plaintiff was arrested by the INS

four days after a pre-hearing conference with the Labor Commissioner regarding her wages claim, and held in their custody for a week. Plaintiff alleges that Defendant's purpose in reporting her was to avoid its liability to Plaintiff on the basis of her wage and overtime claim. Plaintiff Contreras has therefore filed suit against Defendant for retaliation in violation of the FLSA [1] seeking declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs, for the harm she suffered as a result of Defendant's actions.

Defendant now moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that any communications Defendant may have made to the INS are absolutely privileged pursuant to California Civil Code Section 47(b). In the alternative, Defendant seeks to strike Plaintiff's claim for punitive damages as a remedy unavailable under the FLSA.

### IV. *DISCUSSION*

#### A. *Federal Law Preempts California Civil Code Section 47(b)*

Defendant claims that any communications it may have made with the INS are absolutely privileged by operation of California Civil Code § 47(b). The relevant part of Civil Code § 47(b) provides, with some exceptions, immunity from liability for communications made in legislative, judicial, or other official proceedings authorized by law.[2]

It appears unlikely that Defendant is correct in its contention that reports to the INS are absolutely privileged under Civil Code § 47(b).[3] However, this Court need not

---

1. The FLSA provides, in pertinent part, that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...." 29 U.S.C. § 215(a)(3). "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title...." 29 U.S.C. § 216(b).

2. "A privileged publication or broadcast is one made ... [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law...." Cal.Civ.Code § 47(b).

3. If any immunity exists for INS reporting under California law, it would more likely be a limited, qualified immunity, rather than an absolute privilege. *Fenelon v. Superior Court,* 223 Cal.App.3d 1476, 1477, 1483, 273 Cal.Rptr. 367 (1990) (holding that reports of illegal activity to law enforcement agencies were covered by a quali-

reach that question. Any immunity that Civil Code § 47(b) may have afforded Defendant for its actions in this case is preempted by the FLSA by virtue of the Supremacy Clause of the United States Constitution.

### 1. *The Supremacy Clause*

 The Supremacy Clause, Article VI, Cl. 2, provides that "any state law, however clearly within a State's acknowledged power, which interferes or is contrary to federal law, must yield." *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). Preemption may be explicit or implied. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Implied preemption may be found "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

### 2. *The Fair Labor Standards Act*

██ As discussed below, Congress has amply manifested its policy that all employees, regardless of immigration status, enjoy the protection of the FLSA's anti-retaliation provisions. Permitting California Civil Code § 47(b) to render Defendant absolutely immune from retaliation claims under the FLSA would create an insurmountable obstacle to the accomplishment and execution of the full purposes and objectives of Congress in this area. Therefore, insofar as it interferes with the operation and implementation of the FLSA, Civil Code § 47(b) is preempted by federal law.

### a. *Congress Intends That The FLSA Apply To Undocumented Aliens.*

██ There is no question that the protections provided by the FLSA apply to undocumented aliens. *See e.g., In re Reyes*, 814 F.2d 168, 170 (5th Cir.1987), *cert. denied*, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988) ("[I]t is well established that the pro-

tections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. An employee is 'any individual employed by an employer.' "); *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989) (undocumented workers are entitled to the protections of the FLSA for minimum wage and overtime violations). Courts have consistently noted that permitting employers to circumvent labor laws with regard to undocumented aliens flies in the face of public policy in two ways. First, in its most basic sense, it permits abusive exploitation of workers. *See NLRB v. Apollo Tire Co., Inc.*, 604 F.2d 1180 (9th Cir.1979) (Kennedy, J., concurring) ("[I]f [labor laws] were inapplicable to workers who are illegal aliens, we would leave helpless the very persons who most need protection from exploitative labor practices. . . .") Second, it creates an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them. *See Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); *Patel*, 846 F.2d at 704.

In *Sure–Tan v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), the Supreme Court held that an employer may not report its undocumented workers to the INS in retaliation for their assertion of workplace rights. In *Sure–Tan*, a union had prevailed in an NLRB election conducted in an integrated employer's bargaining unit consisting mostly of undocumented Mexican aliens. Following the election, the employer asked the INS to investigate a number of its employees. Subsequently, the INS arrested 5 of them, and they elected voluntary departure as an alternative to deportation. The Supreme Court affirmed the National Labor Relation Board's ruling that the employer violated the NLRA by constructively discharging its undocumented employees. The Court stated,

> "We observe that the Board quite properly does not contend that an employer

---

fied privilege which would apply only if the communication were made "without malice"). As Plaintiff claims that Defendant's communication

to the INS was made with malice, her claim would likely survive Defendant's motion to dismiss on that basis, as well.

may never report the presence of an illegal alien employee to the INS.... *It is only when the evidence establishes that the reporting of the presence of an illegal alien employee is in retaliation for the employee's protected union activity that the Board finds a violation of § 8(a)(3)....* Such a holding is consistent with both the INA and the NLRA." *Sure–Tan,* 467 U.S. at 895–96, 104 S.Ct. 2803 (emphasis added) (citations omitted).

A few years later, the Eleventh Circuit referred to the Supreme Court's holding in *Sure–Tan* when finding analogously that undocumented workers are entitled to the protections of the FLSA for minimum wage and overtime violations.[4] In *Patel v. Quality Inn South,* 846 F.2d 700 (11th Cir.1988), the Eleventh Circuit analyzed in depth the Congressional intent behind the enforcement of the FLSA for undocumented workers. Plaintiff Rajni Patel, who had been working for Defendant Quality Inn South under an expired visa, brought action against his employer under the FLSA for violations of wage and overtime provisions. The *Patel* defendants argued, as does Defendant in this case, that the Congressional enactment of the Immigration and Control Act of 1986 ("IRCA")[5] served to undermine the protection provided to undocumented aliens by the FLSA. As the *Patel* court noted,

> The IRCA's legislative history strongly suggests that Congress believed that undocumented aliens would continue to be protected by the FLSA. The House Education and Labor Committee Report to the IRCA states:
>
> > [T]he committee *does not intend that any provision of this Act would limit the powers of State or Federal labor*

standards agencies ... to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by those agencies. To do otherwise would be counterproductive of our intent to limit the hiring of undocumented employees and the depressing effect on working conditions caused by their employment....

Section 111(d) of the IRCA is even more revealing. *In section 111(d) Congress specifically authorized the appropriation of additional funds for FLSA enforcement on behalf of undocumented aliens....* This provision would make little sense if Congress had intended the IRCA to repeal the FLSA's coverage of undocumented aliens. *Patel,* 846 F.2d at 704 (citations omitted) (emphasis added). Thus it is manifestly clear that, even with the passage of IRCA, Congress intended that undocumented aliens remain under the protection of the FLSA.

The Ninth Circuit has not directly addressed the issue of the FLSA's application to illegal aliens since the passage of IRCA. However, it has made quite clear in dicta that it views the holding of *Patel* with approval. For example, in a case interpreting the scope of application of IRCA to employers, the Ninth Circuit cited *Patel* for its holding that the "Fair Labor Standards Act's coverage of undocumented aliens [was] not repealed by IRCA." *Mester Manufacturing Co. v. Immigration and Naturalization Service,* 879 F.2d 561, 567 (9th Cir.1989) (noting that, when applying IRCA to employers, courts must recognize that employers are also subject to "a host of other federal and state laws affecting their right to terminate employees summarily.") The Ninth Circuit

---

**4.** In analogizing the FLSA to the NLRA, the *Patel* Court noted that Congress enacted both acts as part of the social legislation of the 1930s. Because the two acts have similar objectives and similar definitional provisions, many courts look to decisions under the NLRA when defining the FLSA's coverage. *See, e.g., Rutherford Food Corp. v. McComb,* 331 U.S. 722, 723, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Marshall v. Abbott Farms, Inc.,* 559 F.2d 1006, 1007 & n. 1 (5th Cir.1977)). Similarly, because the provisions of 42 U.S.C. § 2000e et seq. ("Title VII") were largely modeled on those of the NLRA, courts frequently are guided by principles developed

under the NLRA in construing Title VII. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418 & n. 11, 95 S.Ct. 2362, 45 L.Ed.2d 280; *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 768–70, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Ford Motor Co. v. EEOC,* 458 U.S. 219, 226 n. 8, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982).

**5.** Pub.L. NO. 99–603, 100 Stat. 3359 (codified in scattered sections of 8 U.S.C.). Among other things, IRCA imposes sanctions upon employers who knowingly hire undocumented workers.

# 1058

has also explicitly adopted the *Patel* court's broad interpretation of the definition of "employee" in the FLSA:

> The framework of the FLSA ... "strongly suggests that Congress intended an all-encompassing definition of the term 'employee' to include all workers not specifically excepted." *Patel v. Quality Inn South*, 846 F.2d 700, 702 (11th Cir.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989).

*Hale v. Arizona*, 967 F.2d 1356, 1363 (9th Cir.1992) (holding that prison inmates can be "employees" protected by the FLSA).

The Ninth Circuit has also consistently held that analogous labor laws protect undocumented and documented workers equally. *See, e.g., NLRB v. Apollo Tire Co., Inc.*, 604 F.2d 1180 (9th Cir.1979) (finding undocumented workers are "employees" within the meaning of the NLRA); *EEOC v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir.1989) (awarding back pay to undocumented employees in a Title VII action); *Bevles Co., Inc. v. Teamsters Local 986*, 791 F.2d 1391 (9th Cir.1986) (upholding award of reinstatement and back pay to undocumented workers under a collective bargaining agreement).

### b. Congress Has Also Emphasized The Importance Of The FLSA Anti–Retaliation Provision.

In addition to making clear the application of the FLSA to undocumented aliens, Congress has also stressed the importance of the FLSA anti-retaliation provisions to all workers. The public policies underlying the anti-retaliation provision in the FLSA are clear:

> Plainly, effective enforcement [of the FLSA] could only be expected if employees felt free to approach officials with their grievances.... [I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). The importance of deterring employers from unlawfully punishing employees for filing grievances was underscored by Congress when it amended the FLSA in 1977 to provide for enhanced remedies to redress retaliation. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 215(a)(3) of this title [the anti-retaliation provision] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title....") Therefore, Congress has made manifest its intent that all workers, including undocumented aliens, have the right to be free from unlawful retaliation pursuant to the FLSA.

### 3. Conclusion as to Preemption

Congress has made clear that a key goal of the FLSA is to protect undocumented aliens from unlawful retaliation by employers. Permitting employers to enjoy absolute immunity under California Civil Code § 47(b) to file reports with the INS in retaliation for employee complaints not only weakens the anti-retaliation provision of the FLSA, it virtually guts it. Because enforcement of Civil Code § 47(b) under these circumstances "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it is preempted insofar as it prevents enforcement of the FLSA.[6] Thus, view-

---

6. The California courts have similarly recognized that legislative intent can override the statutory privilege of California Civil Code § 47(b). For example, in *Begier v. Strom*, 46 Cal.App.4th 877, 885, 54 Cal.Rptr.2d 158 (1996), California's First District Court of Appeal held that the California's Child Abuse and Reporting Act, which provides for civil liability against those who knowingly make false reports of child abuse, demonstrates the California legislature's intent to create an exception to the privilege provided by Civil Code section 47(b):

> Indeed, we discern within the Child Abuse and Neglect Reporting Act a legislative effort to balance, on the one hand, the public interest in ferreting out cases of child abuse so that the child victims can be protected from harm and, on the other hand, the policy of protecting the reputations of those who might be falsely accused. The Legislature has struck that balance by withholding immunity from those who knowingly make false reports of child abuse. If we were to hold that same conduct privileged under Civil Code section 47, we would essentially nullify the Legislature's determination that liability should attach. Our task is to read statutes with reference to the whole system of law and to avoid rendering a statute meaningless and ineffective. To that end, we hold that the statutory privilege of Civil Code

ing all material allegations in Plaintiff's complaint as true, Plaintiff has set forth a claim for retaliation in violation of the Fair Labor Standards Act. The Court must deny Defendant's motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### B. *Plaintiff's Claim for Punitive Damages*

■ The FLSA does not explicitly address the availability of punitive damages. Instead, it provides for "legal or equitable relief as may be appropriate to effectuate the purposes" of the anti-retaliation provision. 29 U.S.C. § 216(b).

The Seventh Circuit is the only federal appeals court that has interpreted 29 U.S.C. § 216(b) as it applies to retaliation claims under the FLSA. In *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir.1990), *cert. denied*, 502 U.S. 812, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991), the Court upheld an award to the plaintiff of compensatory and punitive damages. The Court noted that, in its prior form enacted in 1938, the FLSA established as remedies statutory wages and overtime compensation plus "an additional equal amount as liquidated damages" plus attorneys' fees. 29 U.S.C. § 216(b). Compensatory and punitive damages were at that time unavailable. Then in 1977, Congress amended the remedial section by adding this language: "Any employer who violates the provisions of section 15(a)(3) of this Act [29 U.S.C. § 215(a)(3) ] .shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3), including without limitation employment, reinstatement, or promotion, and the payment of wages lost

and an additional equal amount as liquidated damages." Pub.L. 95–151, 91 Stat. 1252 (1977). The *Travis* Court noted that this amendment authorizes "legal" relief, a term commonly understood to include compensatory and punitive damages. *Travis*, 921 F.2d 108 at 111.

Since *Travis*, the Seventh Circuit has consistently upheld this view,[7] further explaining that Congress' 1977 amendment to the FLSA "appears to make clear that Congress meant to enlarge the remedies available for [retaliation] beyond those standardly available for FLSA ... violations." *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279, 284 (7th Cir.1993). District courts in other circuits have followed the Seventh Circuit's reasoning in awarding punitive damages under the FLSA.[8]

The Ninth Circuit has not yet addressed this issue directly, but there is ample reason to believe it would agree with the reasoning of the Seventh Circuit. The Ninth Circuit has generally taken a broad view of permissible remedies under federal labor laws. For example, there is currently a split among the Circuits as to whether the Supreme Court's decision in *Sure–Tan* precludes awards of back pay to undocumented aliens subject to unfair labor practices in violation of the NLRA, or whether back pay may be awarded under certain circumstances. *Compare Del Rey Tortilleria, Inc. v. N.L.R.B.*, 976 F.2d 1115 (7th Cir.1992), with *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1517 (9th Cir.1989). The Ninth Circuit has taken the broader view of the *Sure–Tan* holding, upholding awards of back pay to undocumented aliens for wrongful employment practices if, during their time of discharge, the workers

---

section 47, subdivision (b), does not immunize a party who would otherwise be liable under Penal Code section 11172, subdivision (a).
*Begier v. Strom*, 46 Cal.App.4th 877, 885, 54 Cal.Rptr.2d 158 (1996) (citation omitted). The California courts have recognized similar implied exceptions to Civil Code § 47(b) in California's Confidentiality of Medical Information Act, *see Pettus v. Cole*, 49 Cal.App.4th 402, 436, 57 Cal.Rptr.2d 46 (1996), and Invasion of Privacy Act, *see Kimmel v. Goland*, 51 Cal.3d 202, 210, 271 Cal.Rptr. 191, 793 P.2d 524 (1990). It is difficult to see how it could be proper to find implied exceptions to Civil Code § 47(b) in California statutes, while permitting § 47(b) to render ineffective an Act of Congress.

**7.** *Shea v. Galaxie Lumber & Construction Company, Ltd.*, 152 F.3d 729, 734 (7th Cir.1998); *Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543, 551 (7th Cir.1991).

**8.** *See, e.g., O'Brien v. Dekalb–Clinton Counties Ambulance Dist.*, 3 Wage & Hour Cas.2d (BNA) 972, 1996 WL 565817, *6 (W.D.Mo.1996); *Pommier v. James L. Edelstein Enterprises*, 816 F.Supp. 476, 483 (N.D.Ill.1993) (called into doubt on other grounds).

remained in the U.S. available for work, and the back pay period could be calculated with certainty. *See Hacienda Hotel,* 881 F.2d at 1517; *see also Local 512, Warehouse & Office Workers' Union v. N.L.R.B.,* 795 F.2d 705 (9th Cir.1986); *Bevles Co. v. Teamsters Local 986,* 791 F.2d 1391 (9th Cir.1986), *cert. denied,* 484 U.S. 985, 108 S.Ct. 500, 98 L.Ed.2d 499 (1987).

In light of the Ninth Circuit's historically expansive view of remedies under federal labor laws, this Court will not strike Plaintiff's claim for punitive damages.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike Plaintiff's claim for punitive damages, is DENIED.

IT IS SO ORDERED.