Macan SINGH, Plaintiff,

v.

JUTLA & C.D. & R's OIL, INC., Defendants.

No. C 02–1130 CRB.

United States District Court, N.D. California.

Aug. 5, 2002.

Sara Campos, Marielena Hincapie, National Immigration Law Center, Oakland, CA, William W. Friedman, Karen G. Johnson–McKewan, Diane L. Webb, Brobeck, Brobeck, Phleger & Harrison, LLP, San Francisco, CA, Christopher Ho, Legal Aid Society of San Francisco, San Francisco, CA, for Macan Singh.

Eugene T. Franklin, Hayward, CA, for C.D. & R's Oil, Inc.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Plaintiff filed a claim with this Court under the Fair Labor Standards Act's ("FLSA") anti-retaliation provisions and the California Labor Code. Now before the Court is defendants' motion to dismiss. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, the Court hereby DE-

NIES the motion to dismiss for the reasons set forth below.

## BACKGROUND

As alleged, defendant Jutla recruited plaintiff, Macan Singh, to come work for him in the United States. Jutla promised plaintiff a place to live, tuition for education, and that plaintiff would eventually become Jutla's business partner in his corporation, C.D. & R's Oil Inc. Plaintiff, in the United States illegally, worked for Jutla from approximately May 1995 to February 1998 and received no pay.

On January 6, 1999 plaintiff filed a wage claim against defendants with the California Department of Industrial Relations ("Labor Commissioner"), pursuant to section 98 of the California Labor Code. Plaintiff sought unpaid wages and overtime pay for work actually performed. After plaintiff filed the claim, Jutla threatened to report him to the Immigration and Naturalization Services ("INS") unless the claim was dropped. Jutla also tried to force Singh to sign a written waiver of his claims. Plaintiff, however, refused to submit to Jutla. The Labor Commissioner awarded plaintiff $69, 633.73. Defendants appealed from the Labor Commission's judgment by filing an action in the Alameda Superior Court. On February 23, 2001, the first day of the trial, the parties settled. In a written agreement signed by both parties on May 3, 2001, Jutla agreed to make scheduled payments to Singh.

The following day, May 4, 2001, the INS arrested and detained plaintiff. Plaintiff has been in INS custody for fourteen months. He alleges that defendant Jutla contacted the INS and provided them with information of plaintiff's status in an act of retaliation.

On March 7, 2002, plaintiff filed a complaint with this Court against defendants for retaliation under the FLSA and the California Labor Code, requesting declaratory, injunctive, and monetary relief.

## DISCUSSION

### I. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). The court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party. *See id.* The court must also draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987).

### II. Pre-*Hoffman* Law

Defendants contend that under *Hoffman Plastic Compounds, Inc. v. NLRB*, —— U.S. ——, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002) plaintiff has no cause of action. Before this argument can be addressed, however, it is necessary to briefly discuss the relevant law prior to *Hoffman*.

#### A. Undocumented aliens have a cause of action under the National Labor Reform Act ("NLRA")

In *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), the Supreme Court held that undocumented aliens could bring an action under the NLRA. Broadly speaking, *Sure–Tan* stands for the proposition that undocumented workers are protected from unfair labor practices under the NLRA, and specifically, that when the evidence estab-

lishes that an employer reported the presence of an illegal employee to the INS in retaliation for the employee's protected union activity that the alien has a cause of action under section 8(a)(3) of the NLRA. *Id.* at 896, 104 S.Ct. 2803. The *Sure–Tan* court recognized, however, that if there is no specific finding of anti-union animus, reporting an undocumented alien employee would not be an unfair labor practice. *Id.*

The *Sure–Tan* Court also recognized that undocumented aliens are "employees" within the meaning of section 2(3) of the Act.[1] That provision broadly provides that "[t]he term 'employee' shall include any employee," 29 U.S.C. § 152(3), subject only to certain specifically enumerated exceptions. *Id.*

The *Sure–Tan* Court reasoned that allowing undocumented workers to bring a cause of action under the NLRB furthered the purposes of the NLRA because "[i]f undocumented alien employees were excluded from participation in union activities and from protections against employer intimidation, there would be created a subclass of workers without a comparable stake in the collective goals of their legally resident co-workers, thereby eroding the unity of all the employees and impeding effective collective bargaining. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33, [57 S.Ct. 615, 81 L.Ed. 893 (1937)]." 467 U.S. 883, 892, 104 S.Ct. 2803.

The Court held that application of the NLRA to illegal aliens "helps to assure that the wages and employment conditions of lawful residents are not adversely affected by the competition of illegal alien employees who are not subject to the standard terms of employment. If an employer realizes that there will be no advantage under the NLRA in preferring illegal aliens to legal resident workers, any incentive to hire such illegal aliens is correspondingly lessened." *Id.* at 893, 104 S.Ct. 2803.

## B. FLSA covers undocumented aliens

The underlying rationale in *Sure–Tan*, that the NLRA applies to illegal aliens, was extended in *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir.1988), where the Eleventh Circuit held that the FLSA applies to illegal aliens. Applying the *Sure–Tan* analysis, the court looked to the reasoning behind the FLSA and what its objectives were in terms of both legal and illegal workers. The *Patel* court also had to consider the Immigration Reform Control Act ("IRCA") which had not yet been passed when the Supreme Court handed down *Sure–Tan*. The IRCA is a comprehensive scheme that made combating the employment of illegal aliens in the United States central to the policy of immigration law. Consistent with *Sure–Tan*, the *Patel* court held that "the FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA... If the FLSA did not cover undocumented aliens, employers would have an incentive to hire them... By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA. We

---

1. In extending the coverage of the Act to undocumented aliens, the Board has included such workers in bargaining units, *see Duke City Lumber Co.*, 251 N.L.R.B. 53, 1980 WL 12191 (1980); *Sure–Tan, Inc., and Surak Leather Co.*, 231 N.L.R.B. 138, 1977 WL 8951 (1977), enf'd, 583 F.2d 355 (7th Cir.1978), and has found violations of the Act both in their discriminatory discharge, *see Apollo Tire Co.*, 236 N.L.R.B. 1627, 1978 WL 7660 (1978), enf'd, 604 F.2d 1180 (9th Cir.1979); *Amay's Bakery & Noodle Co.*, 227 N.L.R.B. 214, 1976 WL 7638 (1976), and in threats of deportation intended to deter their union activities, *see Hasa Chemical, Inc.*, 235 N.L.R.B. 903, 1978 WL 7461 (1978).

therefore conclude that undocumented aliens continue·to be 'employees' covered by the FLSA." *Id.* at 704.

### 1. The FLSA's anti-retaliation provision

The FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), provides that it shall be unlawful for "any person" to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act. . ." The elements of a retaliation claim under § 15(a)(3) of the FLSA's anti-retaliation provision are: (1) the plaintiff must have engaged in statutorily protected conduct under § 15(a)(3) of the FLSA, or the employer must have erroneously believed that the plaintiff engaged in such conduct; (2) the plaintiff must have suffered some adverse employment action; and (3) a causal link must exist between the plaintiff's conduct and the employment action. Filing a claim with the California Labor Commissioner, as plaintiff did, constitutes protected conduct as specifically set forth in the Act. Filing the claim satisfies the first element.

The threshold question in this case is whether plaintiff's claim satisfies the second element. The most common retaliatory act is discharge, however certain post-employment misconduct has able been found to violate section 215(a)(3). Post-employment misconduct that has been found to violate the anti-retaliation provision includes: informing a prospective employer that an employee had filed a complaint with the Department of Labor ("DOL"), *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir.1977); interfering with a former employee's subsequent employment opportunities by speaking to the landlord of the new employer, *Bonham v. Copper Cellar Corp.*, 476 F.Supp. 98 (E.D.Tenn.1979).

### 2. Reporting an undocumented worker to the INS with a retaliatory motive

In *Contreras v. Corinthian Vigor Ins. Brokers, Inc.*, 25 F.Supp.2d 1053 (N.D.Cal. 1998) the court denied a motion to dismiss an undocumented worker's FLSA retaliation suit under circumstances virtually identical to the present case. The court concluded that "[t]here is no question that the protections provided by the FLSA apply to undocumented aliens." *See e.g., In re Reyes*, 814 F.2d 168, 170 (5th Cir.1987) ("[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. An employee is 'any individual employed by an employer.' "). *Id.* at 1058. Though reporting an illegal alien to the INS is generally encouraged conduct because it is consistent with the labor and immigration policies established by the IRCA, the court in *Contreras* concluded that reporting an illegal alien *with* a retaliatory motive was prohibited conduct under § 215(a)(3).

### C. Pre-*Hoffman*, Plaintiff has a cause of action

Under *Sure–Tan* and *Patel*, plaintiff would have a cause of action. According to *Sure–Tan*, an illegal employee has standing to bring a claim under the NLRA for a retaliatory reporting due to a protected union activity. The extension of *Sure–Tan* in *Patel* indicates that an illegal employee would also have standing to bring an anti-retaliation claim under the FLSA for protected FLSA conduct. Under this pre-*Hoffman* line of jurisprudence plaintiff would have a cause of action under section 215(a)(3), as the Northern Dis-

trict found in *Contreras* by applying both *Sure–Tan* and *Patel* specifically to the retaliatory act of reporting an undocumented worker's immigration status to the INS.

## III. *Hoffman*

■ Defendants contend that under *Hoffman* plaintiff's action is barred. Defendants claim that *Hoffman* does not just merely carve out the particular remedy of back pay, but rather, has greater significance in terms of the remedies available to an undocumented worker under the FLSA. The question before this Court is whether *Hoffman* has so altered the legal landscape that the underlying premises of both *Sure–Tan* and *Patel*-that undocumented workers have the right to particular remedies-have changed such that plaintiff no longer has a cause of action.

*Hoffman* does not compel the conclusion that plaintiff in this case is precluded from seeking a legal remedy. Given the facts in this case, the Court declines to extend *Hoffman* to bar plaintiff's action.

### A. *Hoffman* Background

In *Hoffman*, the Supreme Court held that back pay is not an available remedy

for undocumented workers who bring claims pursuant to the NLRA. The Court held that to award back pay to an illegal alien for years of work "not performed" ran counter to the policies underlying the IRCA of 1986. *Id.* at 1283. *Hoffman* does not, however, hold that an undocumented employee is barred from recovering unpaid wages for work actually performed, nor does it preclude other traditional remedies.[2] In fact, the Court awarded injunctive and declaratory relief.

According to defendants, *Hoffman* should be read broadly, focusing not simply on the narrow issue of whether an undocumented worker is entitled to back pay, but rather, defendants claim that it should be read to indicate that undocumented workers are not entitled to a wider array of remedies under the national labor laws. Defendants' argument likens all other forms of relief to back pay, thereby extending *Hoffman* so that an undocumented worker is precluded from bringing a claim under the FLSA's anti-retaliation provisions.

The *Hoffman* Court reaffirmed its holding in *Sure–Tan* that undocumented aliens

---

2. *Hoffman* holds that undocumented employees are entitled to "traditional remedies" under the NLRA: "We have deemed such 'traditional remedies' sufficient to effectuate national labor policy regardless of whether the 'spur and catalyst' of backpay accompanies them. *Sure–Tan*, 467 U.S., at 904 [104 S.Ct. 2803]." 122 S.Ct. at 1286. The remedies awarded in Hoffman included a cease and desist order and the requirement that the employer "conspicuously post a notice to employees setting forth their rights under the NLRA and detailing its prior unfair practices." *Id.*

Compensatory damages are included in the NLRB's "remedial arsenal." In determining an appropriate remedy under the NLRA, "the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." *Hoffman*, 122 S.Ct. at

1286. *See also, NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); *Fibreboard Paper Products Corp. v. N.L.R.B.* 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). However, the NLRB is precluded from imposing punitive damages. *See Republic Steel Corp. v. NLRB*, 311 U.S. 7, 9–12, 61 S.Ct. 77, 85 L.Ed. 6 (1940).

There is disagreement in the circuits over whether an employee can receive punitive damages under the FLSA's anti-retaliation provisions. *See Snapp v. Unlimited Concepts, Inc.* 208 F.3d 928 (11th Cir.2000)(holding that punitive damages go beyond the statutory goal of making a plaintiff whole again and are therefore not available in an anti-retaliation claim);*but see Travis v. Gary Community Mental Health Ctr., Inc.,* 921 F.2d 108, 112 (7th Cir.1990) (holding that "punitive damages are appropriate for retaliatory discharge").

are employees under the NLRA *Id.,* 122 S.Ct. at 1281. Though *Hoffman* prevents an undocumented worker from seeking back pay, it does not preclude an undocumented worker from seeking *any* form of relief, as shown through the Court's granting of both injunctive and declaratory relief. While *Hoffman* did not address the remedies of compensatory and punitive damages, which are central here, given the factual circumstances of this case and the interplay with national immigration policy, the Court declines to extend *Hoffman* to bar the remedies that plaintiff seeks.

### B. Defendant in this case is a "knowing employer"

Under the IRCA it is a crime for an unauthorized alien to tender fraudulent documentation in order to subvert an employer's verification system used to determine if a worker is authorized or not. 8 U.S.C. § 1324c(a). In *Hoffman,* the plaintiff produced fraudulent documents to obtain employment. His employer, then, was not aware of the plaintiff's illegal status. The court stated that to allow an illegal alien to receive back pay "would unduly trench upon explicit statutory prohibitions critical to federal immigration policy. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." *Hoffman,* 122 S.Ct. at 1284. Allowing back pay to an illegal employee who was hired by an unknowing employer, then, runs contrary to immigration policy. However, as the dissent notes "[w]ere the Board forbidden to assess back pay against a knowing employer—a circumstance not before us today, *see* 237 F.3d 639, 648 (C.A.D.C.2001)—this perverse economic incentive, which runs directly

contrary to the immigration statute's basic objective, would be obvious and serious." *Id.,* 122 S.Ct. at 1287.

Defendant in this case was not just a knowing employer, but allegedly, actively recruited plaintiff to come work in the United States. Defendants continued to employ him for approximately three years, throughout which they were aware of his illegal status.

### C. Plaintiff is not seeking back pay

*Hoffman* eliminated back pay as a remedy available to undocumented workers, thus the decision precludes illegal aliens from a very specific remedy. "*Hoffman* does not establish that an award of unpaid wages to undocumented workers for work actually performed runs counter to IRCA." *Flores v. Albertsons, Inc.,* 2002 WL 1163623 (C.D.Cal.2002).[3]

### D. Including undocumented workers in the FLSA's coverage is consistent with immigration policy

Allowing an undocumented worker to bring an anti-retaliation claim under the FLSA is consistent with the immigration policies underlying the IRCA. Congress enacted the FLSA to eliminate substandard working conditions by requiring employers to pay their employees a statutorily prescribed minimum wage and prohibiting employers from requiring their employees to work more than forty hours per week unless the employees are compensated at one and one half times their regular hourly rate. *See* 29 U.S.C. § 202; § 206, and § 207(a)(1). Congress enacted the IRCA to reduce illegal immigration not only to eliminate the economic incentive for illegal workers to come to this country, but also to

---

**3.** As previously discussed, *Hoffman* holds that employees are still entitled to the NLRB's "traditional remedies." 122 S.Ct. 1275, 1286.

eliminate employers' incentive to hire undocumented workers by imposing sanctions on employers who hire such workers. *See* U.S.C. § 1324a. Though the FLSA does not impose sanctions, it also discourages employers from hiring such workers because it eliminates employers' ability to pay them less than minimum wage or otherwise take advantage of their status. As the *Patel* court noted, "[i]f the FLSA did not cover undocumented aliens, employers would have an incentive to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanctions under the IRCA." 846 F.2d at 704. If employers know they have to pay illegal aliens the same wage as legal workers, they are far less likely to hire an illegal worker and run the risk of subjecting themselves to sanctions under the IRCA. As a result, there are fewer employment opportunities and therefore fewer incentives to enter this country illegally.

Admittedly, similar arguments could be used to support the award of back pay, which was rejected in *Hoffman*. Indeed, every remedy extended to undocumented workers under the federal labor laws provides a marginal incentive for those workers to come to the United States. It is just as true, however, that every remedy denied to undocumented workers provides a marginal incentive for employers to hire those workers. The economic incentives are in tension. Given this tension, the courts must attempt to sensibly balance competing considerations. In this case, the balance tips sharply in favor of permitting this cause of action, and the remedies it seeks, to go forward. Prohibiting plain-

tiff from bringing this claim under the FLSA would provide a perverse economic incentive to employers to seek out and knowingly hire illegal workers, as defendant did here, in direct contravention of immigration laws. Though employers that succumbed to these incentives would run the risk of sanctions under the IRCA, that risk may be worth taking.[4] National labor and immigration policy is most appropriately balanced by permitting this case to go forward.

### CONCLUSION

Because this Court finds that plaintiff's action under the FLSA is not barred for the aforementioned reasons, defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

---

4. Indeed, it is the employees who face the most significant and immediate immigration sanctions.