**Maria FLORES, Plaintiff,**

v.

**Javier AMIGON, d/b/a La Flor Bakery, Defendant.**

**No. 02CV838.**

United States District Court, E.D. New York.

Sept. 20, 2002.

*ORDER*

POLLAK, United States Magistrate Judge.

Plaintiff Maria Flores alleges in her complaint that she was an employee of defendant La Flor Bakery for approximately three years, during which time she was denied the overtime premium pay to which she claims entitlement under federal and state wage laws. Defendant seeks discovery of plaintiff's immigration documents, social security number, and passports, asserting that the information is relevant in establishing its defense that an award of back pay to an undocumented alien would run afoul of the policies underlying the Immigration Reform and Control Act of 1986 (the "IRCA"). *See Hoffman Plastic Compounds, Inc. v. N.L.R.B.,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). Plaintiff moves for a protective

order, arguing that such discovery regarding her immigration status is not relevant to claims for unpaid wages under the Fair Labor Standards Act ("FLSA") and there is an *"in terrorem"* effect to the production of these documents that clearly outweighs the need for disclosure.

## DISCUSSION

■ Numerous lower courts have held that all employees, regardless of their immigration status, are protected by the provisions of the FLSA. *See, e.g., Flores v. Albertsons, Inc.,* 01 CV 00515(AHM), 2002 WL 1163623 at *5 (C.D.Cal. Apr. 9, 2002) (noting that "Federal courts are clear that the protections of the FLSA are available to citizens and undocumented workers alike") (citing *Patel v. Quality Inn So.,* 846 F.2d 700, 706 (11th Cir.1988)); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 25 F.Supp.2d 1053, 1056 (N.D.Cal.1998) (holding "[t]here is no question that the protections provided by the FLSA apply to undocumented aliens") (citing *In re Reyes,* 814 F.2d 168, 170 (5th Cir.1987), *cert. denied,* 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988)). *See also Liu v. Donna Daran Int'l, Inc.,* 207 F.Supp.2d 191 (S.D.N.Y.2002) (holding that plaintiffs' immigration status was not relevant to their claims under the FLSA that they had been paid less than the minimum wage for work performed).

■ In arguing that plaintiff's immigration status may be relevant to limit defendant's liability for back pay, defendant relies on the Supreme Court's holding in *Hoffman,* 122 S.Ct. 1275. There the Court vacated the NLRB's award of reinstatement and backpay to an undocumented alien for years of work "not performed" following the alien's termination from employment. The Court, in finding that reinstatement and backpay under these circumstances would violate the IRCA, raised two concerns. First, the Court found that an order for reinstatement of an individual who was not lawfully present in the United States would be contrary to the Court's prior holding in *Sure–Tan Inc. v. N.L.R.B.,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), and would violate the subsequently enacted provisions of the IRCA that make it illegal for an employer to hire illegal aliens in the United States. 8 U.S.C. §§ 1324a(a)(1), 1324b, 1324c(a)(1)-(3). With respect to the award of backpay, the Court found that because an illegal alien would be unable to lawfully obtain employment, it would be impossible for the employee to mitigate damages during the years following the termination. 122 S.Ct. at 1282–84. Thus, the Court concluded that under these circumstances, where an employee had been terminated and was seeking backpay for the period of time following the termination during which no work was performed, an award of backpay would be contrary to the policies of the IRCA. (*Id.* at 1284). Based on this rationale, defendant argues that discovery of Ms. Flores' immigration status is relevant to determine whether she is precluded from obtaining an award of backpay under the FLSA if it can be shown that she is illegally in this country.

Two recent decisions, however, have limited the application of *Hoffman* to cases where claims of backpay are made for work "not performed." *See, e.g., Liu v. Donna Karan Int'l, Inc.,* 207 F.Supp.2d at 192; *Flores v. Albertsons, Inc.,* 2002 WL 1163623 at *5. In both cases, the courts found that *Hoffman* did not expressly deal with the circumstances presented here, where the plaintiffs had already performed the work for which unpaid wages were being sought. Indeed, the distinction between undocumented workers seeking backpay for wages actually earned and those seeking backpay for work not performed has been recognized by courts even prior to the decision in *Hoffman. See, e.g., Del Rey Tortilleria, Inc. v. N.L.R.B.,* 976

F.2d 1115 (7th Cir.1992). As a consequence, both the courts in *Liu* and *Flores* found that discovery into the plaintiffs' immigration status was irrelevant and posed a serious risk of injury to the plaintiffs, outweighing any need for disclosure. As the court in *Liu* noted: "Even if the parties were to enter into a confidentiality agreement restricting the disclosure of such discovery..., there would still remain 'the danger of intimidation, the danger of destroying the cause of action' and would inhibit plaintiffs in pursuing their rights." *Liu v. Donna Karan Int'l, Inc.*, 207 F.Supp.2d at 193 (quoting *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y.2001)).

This Court agrees with the decisions in *Liu* and *Flores* in finding that *Hoffman* did not expressly deal with the circumstances presented here and that the policy issues addressed and implicated by the decision in *Hoffman* do not apply with the same force as in a case such as this. Indeed, it is arguable that enforcing the FLSA's provisions requiring employers to pay proper wages to undocumented aliens when the work has been performed actually furthers the goal of the IRCA, which requires the employer to discharge any worker upon discovery of the worker's undocumented alien status. 8 U.S.C. § 1324a(a)(2). If employers know that they will not only be subject to civil penalties, 8 U.S.C. § 1324a(e)(4)(A), and criminal prosecution, 8 U.S.C. § 1324a(f)(1), when they hire illegal aliens, but they will also be required to pay them at the same rates as legal workers for work actually performed, there are virtually no incentives left for an employer to hire an undocumented alien in the first instance. *See Patel v. Quality Inn So.*, 846 F.2d at

704 (noting that the "FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA .... If the FLSA did not cover undocumented aliens, employers would have an *incentive* to hire them"). Whatever benefit an employer might have been gained by paying less than the minimum wage is eliminated and the employer's incentive would be to investigate and obtain proper documentation from each of his workers. *See also Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d at 1056 (noting that the "IRCA's legislative history strongly suggests that Congress believed that undocumented aliens would continue to be protected by the FLSA" and finding that permitting an employer to circumvent the labor laws as to undocumented aliens "permits abusive exploitation of workers" and "creates an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them") (citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732).[1] Finally, unlike the problem posed in *Hoffman* in which an illegal alien was wrongfully terminated from employment and could not be legally reinstated and could not legally obtain other work in mitigation because he was not lawfully permitted to be in the United States, here no such impediment exists to repayment of any amounts proved to be owed to plaintiff for work that she already performed.

Accordingly, plaintiff's motion for a protective order is granted. Not only does this Court find that the information is not relevant to defendant's defense, but as the court in *Liu* noted, even if it were, the potential for prejudice far outweighs whatever minimal probative value such infor-

---

1. In this regard it should be noted that the Department of Labor has indicated that *Hoffman* will not affect the enforcement of the FLSA. (Pl.'s Reply Letter, dated July 26, 2002 (citing Fact Sheet # 48: Application of U.S. Labor Laws to Immigrant Workers: Effect of

mation would have.[2]  *Liu v. Donna Karan Int'l, Inc.,* 207 F.Supp.2d at 193.

**SO ORDERED.**

*Hoffman Plastic* decision on laws enforced by the Wage and Hour Division)).

2.  This Court notes that while discovery under the Federal Rules of Civil Procedure is generally broad and far-reaching, *Sterbens v. Sound Shore Med. Ctr. of Westchester,* No. 01 CV 5980, 2001 WL 1549228 (S.D.N.Y. Dec.5, 2001), here the added *in terrorem* effect of producing these documents weighs in favor of granting the request for a protective order.  If forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from bringing an action such as this in the first instance.  *See Flores v. Albertsons, Inc.,* 2002 WL 1163623 at *6. This would effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation. (*Id.*) Until Congress or the Supreme Court clearly determines that the FLSA does not apply to these workers, the prejudice to plaintiff outweighs any potential relevance this information may have to the defense.