**Martha GALAVIZ–ZAMORA, et al., Plaintiffs,**

v.

**BRADY FARMS, INC., et al., Defendants.**

No. 1:04–CV–661.

United States District Court, W.D. Michigan, Southern Division.

Sept. 23, 2005.

MDL–1725—In re Delphi Corp. Securities, Derivative and "ERISA" litigation.

Robert Anthony Alvarez, Michigan Migrant Legal Assistance Project, Inc., Grand Rapids, MI, Ronald J. Vander Veen, Cunningham Dalman, PC, Holland, MI, for Plaintiffs.

Joseph J. Vogan, Elizabeth Wells Skaggs, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, for Defendants.

Juan Esteban Garcia Hernandez, Wyoming, MI, pro se.

## ORDER

CARMODY, United States Magistrate Judge.

This matter is before the Court on *Plaintiffs' Motion for Protective Order.* (Dkt.# 44). As discussed herein, Plaintiff's motion is **granted in part and denied in part.**

Plaintiffs are a class of migrant and seasonal agricultural workers who allege that Defendants violated their rights under the Fair Labor Standards Act (FLSA) and the Migrant and Seasonal Agricultural Worker Protection Act (AWPA). In defending the present action Defendants have submitted to Plaintiffs various interrogatories and requests for production seeking information which Plaintiffs allege is designed for the improper purpose of determining their immigration status.

For example, Defendants seek to discover the following: (1) Plaintiffs' social security numbers; (2) the various addresses of Plaintiffs' private residences; (3) copies of Plaintiffs' tax returns (including all W–2s and 1099s); (4) copies of Plaintiffs' driver's licenses or identification cards; (5) copies of Plaintiffs' social security cards; (6) copies of Plaintiffs' passports; (7) copies of Plaintiffs' Alien Registration cards; (8) copies of Plaintiffs' Employment Authorization cards; (9) copies of Plaintiffs' voter's registration cards; (10) copies of each Plaintiff's United States birth certificate or Certificate of Birth Abroad issued by the United States Department of State. (Dkt. # 45, Exhibits 1–2). Plaintiffs seek a protective order preventing Defendants from discovering such information.

Pursuant to Federal Rule of Civil Procedure 26(c) the Court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See also, Degen v. United States,* 517 U.S. 820, 826, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) (the court has the authority "to manage discovery in a civil suit, including the power to enter protective orders limiting discovery as the interests of justice require"); *In re Sealed Case (Medical Records),* 381 F.3d 1205, 1216 (D.C.Cir.2004)("the 'court, in its discretion, is authorized by [Rule 26(c)] to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests— that might be harmed by the release of the material sought' ").

 The party seeking the imposition of a protective orders bears the burden of establishing that good cause exists to impose such relief. *See Nix v. Sword,* 11 Fed.Appx. 498, 500 (6th Cir., May 24, 2001) (citations omitted). To establish good cause, the party seeking a protective order "must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citations omitted). As discussed below, the Court finds that Plaintiffs have satisfied this standard.

 There is no question that the disputed discovery requests are designed to uncover Plaintiffs' immigration status. Defendants readily acknowledge such, asserting that Plaintiffs' immigration status is "relevant for purposes of establishing their entitlement to damages and their standing to sue." Defendants further assert that Plaintiffs' immigration status is relevant to class certification as well as assessing credibility. The Court is unpersuaded.

In support of its position that Plaintiffs' immigration status is relevant for purposes of establishing standing and damages, Defendants rely on *Hoffman Plastic Compounds, Inc. v. NLRB,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). This reliance is misplaced.

In 1988, Hoffman Plastics hired Jose Castro. *Id.* at 140, 122 S.Ct. 1275. Several months later, Hoffman laid off Castro and other employees engaged in union organizing activities. *Id.* Finding Hoffman's action illegal, the National Labor Relations Board (NLRB) ordered Hoffman to reinstate several employees, including Castro, with backpay. *Id.* at 140–41, 122 S.Ct. 1275. It was later determined, however, that Castro had "never been legally admitted to, or authorized to work in, the United States." *Id.* at 141, 122 S.Ct. 1275. Based on this evidence, an ALJ ruled that Castro was not entitled to backpay. *Id.* The NLRB reversed this determination. *Id.* at 141–42, 122 S.Ct. 1275. The Court of Appeals for the District of Columbia Circuit affirmed the NLRB's decision, a ruling which Hoffman appealed to the United States Supreme Court. *Id.* at 142, 122 S.Ct. 1275. The Court concluded that awarding backpay to illegal aliens "for years of work *not performed*" ran counter to the "comprehensive scheme prohibiting the employment of illegal aliens" enacted by Congress. *Id.* at 147–49, 122 S.Ct. 1275 (emphasis added). The Court, therefore, reversed the decision of the court of appeals on the ground that Castro was not entitled to receive backpay for work he never performed. *Id.* at 152, 122 S.Ct. 1275.

At first glance, *Hoffman* appears to support Defendants' position that Plaintiffs' immigration status is relevant in this matter. However, courts have "limited the application of *Hoffman* to cases where claims of backpay are made for work 'not performed.' " *Flores v. Amigon,* 233 F.Supp.2d 462, 463 (E.D.N.Y. 2002) (citations omitted). As the *Flores* court recognized, the *Hoffman* court "did not expressly deal with the circumstances presented here, where the plaintiffs have already performed the work for which unpaid wages were being sought." *Id.*

The *Flores* court also noted that the policy issues implicated in *Hoffman* are not implicated in circumstances where an employee seeks backpay for work already performed. *Id.* at 464. For example, while the award of backpay in *Hoffman* was held to be contrary to federal immigration law, compelling employers to pay illegal aliens at the same rate

as legal workers (for work actually performed) helps eliminate the incentive to employ illegal aliens, one of the stated goals of federal immigration law. *Id.* The *Flores* court further observed that "the distinction between undocumented workers seeking backpay for wages actually earned and those seeking backpay for work not performed has been recognized by courts even prior to the decision in *Hoffman.*" *Id.* at 463–64.

■ The *Flores* court, therefore, declined to extend *Hoffman* to circumstances such as those presently before the Court where individuals seek fair compensation for work already performed. The Court is persuaded by the *Flores* court's reasoning and analysis. Defendants have presented no controlling authority concluding otherwise. While Defendants have identified authority which purportedly supports extending *Hoffman* to the facts of this case, the Court finds such authority unpersuasive. Accordingly, the Court concludes that Plaintiffs' immigration status is not relevant for purposes of standing or damages.

Defendants next assert that Plaintiffs' immigration status is relevant to class certification and assessing credibility. With respect to class certification, Defendants assert that knowledge of each Plaintiff's work history is relevant to determining whether that particular Plaintiff is an adequate representative of the entire plaintiff class. While each individual Plaintiff's *work history* may be relevant to this question (and as discussed below properly discoverable), the Court fails to discern the relevance of any Plaintiff's immigration status on his or her ability to adequately represent other class members. Defendants have cited no authority supporting its position in this regard.

As for Defendants' argument that Plaintiffs' immigration status is relevant on the issue of credibility, the Court is likewise unpersuaded. While a witness' credibility is arguably always at issue, such does not mean that *unlimited* exploration on the subject is permitted. *See, e.g.,* Fed.R.Evid. 403, 404, 608. Furthermore, the damage and prejudice which would result to Plaintiffs if discovery into their immigration status is permitted *far* outweighs whatever minimal legitimate value such material holds for Defendants.

The case of *John Dory Boat Works, Inc. v. International Indus. Production Employees Union,* 229 NLRB 844, 1977 WL 8680 (1977), is illustrative. In that matter, action was taken against John Dory Boat Works for violations of federal labor laws. *Id.* at 845–48. As part of this action a hearing was conducted. While waiting to testify at the hearing, five of Dory's Spanish-speaking employees were served with subpoenas requiring each of them to produce their passports, Alien Registration Cards, and Employment Authorization Cards. *Id.* at 848. Dory asserted that the requested material was relevant to challenge each employee's credibility. *Id.*

While the subpoenas were subsequently quashed, merely requesting information regarding the employees' immigration status had demonstrable (and prejudicial) effect. As the ALJ conducting the hearing reported, "the effect upon the . . witnesses of this wholly irrelevant probe into their immigration status which I observed at the hearing ranged from unsettling to devastating and certainly affected their ability to testify." *Id.* at 852.

Other courts have recognized the detrimental impact resulting from irrelevant inquiries into a worker's immigration status. *See, e.g., Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1064 (9th Cir.2004) (recognizing that "[w]hile documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution"); *Flores,* 233 F.Supp.2d at 464–65 n. 2 (recognizing that "[i]f forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from bringing an action such as this in the first instance . . . [which] would effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation").

■ While Defendants are not entitled to discover information regarding Plaintiffs' immigration status, Defendants are entitled to

discover information regarding Plaintiffs' work history as such is clearly relevant to the issues raised by Plaintiffs' claims. However, for the reasons discussed above, such information must be obtained in a manner that does not reveal the immigration status of any plaintiff. To this end, Plaintiffs assert that they are willing to provide affidavits "detailing all the employers with whom they worked during the period of time they claim to have also worked for Defendants," so long as Defendants are prohibited from seeking discovery of information that could lead to the discovery of the immigration status of any plaintiff. Such affidavits constitute, in the Court's estimation, an appropriate resolution to the present dispute. It provides Defendants with the relevant information to which they are entitled without requiring Plaintiffs to disclose their immigration status.

Accordingly, the Court **grants in part and denies in part** Plaintiffs' motion for protective order. Specifically, Plaintiffs are protected from disclosing the following information:

1. Federal, State, or Local tax returns under all of their identities;

2. Federal, State, or Local W–2 or 1099 forms under all of their identities;

3. All identification documents and information regarding worker status, alien status, social security cards, visas, national origin, and alien identifications;

4. Each date and time that Plaintiffs have crossed the United States/Mexico border, including any visa or passport stamp record showing these border crossings; and

5. Any documents or information likely to lead to the discovery of Plaintiffs' immigration status.

Furthermore, each Plaintiff shall execute an affidavit identifying every employer for whom they were employed during the time period they claim to have also worked for Defendants. However, Defendants shall not seek discovery of any information from any such employer (or any other person or entity) that could lead to the discovery of the immigration status of any plaintiff. Violations of this provision will result in sanction. Defendants may, however, contact Plaintiffs' other employers to verify the alleged dates of employment.

The Court wants to re-emphasize that information regarding Plaintiffs' employment history is relevant in this matter. Thus, in the event that the provisions of this Order prove ineffective (through no fault of Defendants) in enabling Defendants to discover the relevant information to which they are entitled, the Court will entertain a motion by Defendants to revisit the issues addressed herein.

IT IS SO ORDERED.